# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABEL OSAGIE | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:16-CV-01311 (VAB) |
| | : | |
| U.S. EQUITIES CORP., et. al. | : | |
| Defendants. | : | |
| | : | |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

Mr. Abel Osagie ("Mr. Osagie" or "Plaintiff"), proceeding *pro se*, filed a Complaint against Defendants U.S. Equities, Linda Strumpf ("Ms. Strumpf), and Joseph Doherty ("Judge Doherty"). Mr. Osagie brings six claims for relief, five against Defendants Strumpf and U.S. Equities, and one against Defendant Doherty, arising out of an action in Connecticut Superior Court in which Defendant U.S. Equities, represented by Ms. Strumpf, brought a complaint against Ms. Osagie's wife. In 2012, Defendant Doherty granted judgment against Ms. Osagie in this action. Before the Court are motions to dismiss from all Defendants. For the reasons that follow, these motions are GRANTED.

## I.    FACTUAL ALLEGATIONS

U.S. Equities is a New York corporation that does business in the State of Connecticut. Am. Compl. ¶ 3 ("Compl."). Ms. Strumpf is an attorney in the State of Connecticut with office in New Canaan, Connecticut. *Id.* at ¶ 4. Judge Doherty was a Judge in the State of Connecticut Superior Court "at the time of his actions relevant to this case." *Id.* at ¶ 5.

On May 30, 2007, Mr. and Ms. Osagie signed an agreement with JPMorgan Chase Bank N.A. for a home mortgage. Compl. ¶ 11. Ms. Osagie also used a Chase Bank credit card, which was subject to a cardmember agreement. *Id.* at ¶¶ 13-14; *see also* Credit Card Contract, Ex. 2 to

Compl. ("Contract"), ECF No. 29-1. The Contract, Mr. Osagie alleges, included a choice of law clause stating that:

> [t]he terms and enforcement of this Agreement and your account shall be governed and interpreted in accordance with Federal law and to the extent state law applies, the law of Delaware. Without regard to conflict-of-law principles, the law of Delaware where we and your account are located, will apply no matter where you live or use the account.

*Id.* at 4; *see also* Compl. ¶ 14. On July 1, 2007, Mr. and Ms. Osagie entered into an agreement, under which Mr. Osagie, "the indemnitor," was able to "use the credit from the joint open mortgage account with Chase Bank in financing his business ventures." Ex. 5 to Compl. ("Indemnity Agreement"), ECF No. 29-1 at p. 33. The Chase Bank account at issue in the Complaint was listed in the agreement. *Id.* In the agreement, Mr. Osagie also agreed to "indemnify [Ms. Osagie] from any and all liability, loss, or damage [she] may suffer as a result of claims, demands, costs, or judgments . . . arising from the use of the accounts." *Id.*

In December 2008, because of a dispute about their Chase Bank mortgage, the Osagies "stopped paying on all the Chase Bank Accounts," including the credit card account. *Id.* at ¶ 20. In 2012, the Osagies raised claims against Chase relating to a mortgage dispute in a separate lawsuit in the District of Connecticut. *Id.* at ¶ 23 (citing *Pride Acquisitions, LLC v. Osagie*, No. 3:12-cv-00639-JCH (2015)).

Meanwhile, U.S. Equities acquired Ms. Osagie's credit card agreement from Chase Bank. Compl. ¶ 24. Ms. Strumpf, a lawyer for U.S. Equities, wrote a demand letter to Ms. Osagie on August 2, 2011, identifying herself and Defendant U.S. Equities as the successors in interest to her Chase Bank credit card agreement. *Id.* at ¶ 25. Ms. Osagie informed her husband about this notice. *Id.* at ¶ 27. Mr. Osagie "promptly informed Ms. Strumpf through a series of communications (phone calls, fax) with her and staff of her law office that no money was owed

to Chase Bank on [the Chase account] since the account was damaged by Chase Bank and that whatever was transferred to U.S. Equities Corp. was worthless." *Id.* at ¶ 27.

Defendants Strumpf and U.S. Equities attempted to collect the debt for the next nine months. *Id.* at ¶ 30. Then, on May 11, 2012, Ms. Osagie received a summons from the Connecticut Superior Court in Danbury, alleging. *Id.* at ¶ 31. Judge Doherty presided over the case. *See* U.S. Equities Corp. v. Osagie, No. DBD-CV-126009745-S *available at* http://civilinquiry.jud.ct.gov/GetDocket.aspx ("Docket").[1]

On September 18, 2012, Ms. Osagie moved to substitute Mr. Osagie in the Superior Court action, claiming that Mr. Osagie was the assignee of the account and the "true owner of the rights under the [Chase account]." Compl. ¶ 32; *see also* Docket, ECF No. 104. On October 1, 2012, Judge Doherty denied this motion. *See* Docket, 104.05. On October 10, Ms. Osagie moved the Superior Court to reconsider this decision. *Id.* at 107.00. Twelve days later, Judge Doherty denied this request. *Id.* at 105.05.

On January 17, 2013, Ms. Osagie filed an answer to U.S. Equities' Amended Complaint, raising two special defenses. First, she claimed that Chase Bank had breached the Contract before assigning the underlying debt to U.S. Equities, and, second, she argued that U.S. Equities had "dirty hands," and was "acting in concert with Chase Bank … in order to make it difficult for [the Osagies] to bring Chase Bank to justice by increasing the number of entities [the Ms.

---

[1] On a motion to dismiss, this Court may consider public documents, "particularly where plaintiff has been put on notice by defendant's proffer of these public documents." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Furthermore, the Second Circuit has held that district courts may properly take judicial notice of docket sheets in other court cases. *See Mangifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) (finding no error in district court's reliance on a docket sheet in another case because "docket sheets are public records of which the court could take judicial notice") (citation omitted). In this case, the Plaintiffs were on notice of the state court filings that CMI includes as exhibits to its Motion to Dismiss, and Court's consideration of these documents does not risk converting CMI's motion to dismiss into a summary judgment motion." *Cortec Indus.*, 949 F.2d at 47.

Osagie] ha[d] to chase (no pun intended) after."  Docket, No. 117.00, (Answer), p. 6.[2]  On

October 29, 2013, U.S. Equities moved for summary judgment.  *Id.* at 118.00.

On November 1, 2013, Ms. Osagie moved to join Mr. Osagie as a third party plaintiff and

to implead Chase Bank.  ECF No. 120.00.  The motion was denied on November 14, 2013.  *Id.* at

120.05.  On December 2, 2013, Ms. Osagie moved the Superior Court to dismiss U.S. Equities'

amended complaint, arguing that the Contract mandated that Delaware law apply to all disputes

between the parties and therefore deprived the Superior Court of subject matter jurisdiction over

the action.  *Id.* at 120.00; Motion to Dismiss in DBD-CV-12-6009745-S, Ex. B to Mot. for Jud.

Notice, ECF No. 27-2, p. 90.  The Court denied the motion on December 23, 2013.  Docket, ECF

No. 126.50.  Judge Doherty granted summary judgment as to Ms. Osagie's liability on January

22, 2014.  On March 31, 2014, Judge Doherty docketed a memorandum of decision, in which he

explained his reasons for denying Ms. Osagie's motion to join Mr. Osagie and implead Chase

Bank, as well as his reasons for denying her motion to dismiss.  *Id.* at 126.50.

In his decision, Judge Doherty specifically referred to Ms. Osagie's argument that

Connecticut law did not apply to the transaction at issue.  He stated that:

> The basis of the defendant's motion to dismiss is that the alleged credit card
> agreement, which the defendant claims governs this matter, states that Federal law
> and Delaware law governs the terms of the card member agreement and, since
> Delaware law may apply, this court has no subject matter jurisdiction. However,
> since the basis of the complaint is an account stated, the card member agreement
> would not be applicable. Even if the laws of another state would apply to this case,
> that would not deprive this court of subject matter jurisdiction.

Mem. of Decision, Docket, ECF No. 126.50.  Judge Doherty explained that the court had subject

matter jurisdiction over the debt collection case because Ms. Osagie resided in Connecticut when

---

[2] Defendants have provided copies of several of the documents in the Superior Court matter, including Ms. Osagie's Answer (ECF No. 117.00), Motion to Implead (ECF No. 120.00), and Motion to Dismiss (ECF No. 126.00). Defendants move for judicial notice of these documents.  *See* ECF No. 25.  For the reasons outlined in Note 1, the Court grants Defendants' motion and takes judicial notice of these documents.

it was commenced.  *Id.*  He explained that the Fair Debt Collection Practices Act required a plaintiff in a debt collection case to bring a legal action against a consumer in the judicial district where the consumer signed the contract, or in the one where the consumer resided.  *Id.* (citing 15 U.S.C. 1692i).

As Mr. Osagie alleges, Ms. Osagie "did her best to fight Defendant Doherty's actions through an appeal."  Compl. ¶ 34.  First, Ms. Osagie moved to appeal Judge Doherty's decisions on her motion for impleader and motion to dismiss, but the Appellate Court found that neither motion was an appealable final judgment and therefore dismissed the appeal.  Docket, 139.00. Then, after a hearing on damages, Judge Doherty rendered judgment for U.S. Equities in the amount of $23,325.82 and ordered Ms. Osagie to make weekly payments totaling $140.00 per month.  Docket, 143.00.  The Appellate Court affirmed the decision per curiam on October 13, 2015.  *Id.* at 149.00; *U.S. Equities Corp. v. Osagie*, 160 Conn. App. 904 (2015).

Mr. Osagie filed this case on September 29, 2016.  His first five claims are against Defendants Strumpf and U.S. Equities Corp.  The first claim seeks a declaratory judgment "that Connecticut common laws are not applicable to any collection effort on [the Chase account] and that [the] account is governed and can only be interpreted in accordance with Federal law and to the extent state law applies, the law of Delaware as agreed in the card member agreement." Compl. ¶ 50.   The second claim, a claim for "negligence per se," alleges that Defendants U.S. Equities and Ms. Strumpf negligently attempted to collect debt on the Chase account, although they knew that such an attempt was a violation of Delaware state law.  *Id.* at ¶¶ 55-58.  The third claim, for "negligence," alleges that the same two Defendants negligently "pursu[ed] a disputed debt based on the laws of the State of Delaware after recovery on the debt was time-barred was negligent under the laws of the State of Delaware."  *Id.* at ¶ 65.  The fourth claim, for

"fraudulent/intentional misrepresentation," alleges that the same two Defendants intentionally and fraudulently refused to provide a purchase agreement when attempting to collect the debt, "in order to hide their knowledge of" the agreement's "choice-of-law" provisions. *Id.* at ¶ 74. The fifth claim alleges that the same two defendants attempted to "collect on a time-barred debt," in violation of the Federal Debt Collection Practices Act ("FDCPA"). *Id.* at ¶ 83.

Mr. Osagie brings only one claim against Defendant Doherty. In this claim, his sixth, he seeks a declaratory judgment that Judge Doherty lacked subject matter jurisdiction over the Superior Court action, and alleges that Judge Doherty "aid[ed] and abet[ted] the fraudulent acts of U.S. Equities Corp. and Linda Strumpf in hearing [the Superior Court case] when he had no subject-matter jurisdiction," in violation of 42 U.S.C. Sec. §§ 1983 and 1985. Compl. ¶¶ 89-94.

In late September, all three Defendants moved to dismiss the case. *See* ECF Nos. 20 and 25. On September 29, 2016, Mr. Osagie filed a motion for leave to amend, as well as an amended complaint. *See* ECF No. 29. Before the Court ruled on the motion for leave to amend, Defendants moved to dismiss the amended complaint as well. *See* Defendant Doherty's Motion to Dismiss (ECF No. 30) ("Doherty Mot."); Defendants' U.S. Equities and Linda Strumpf's Motion to Dismiss (ECF No. 32) ("Strumpf Mot."). Accordingly, the Court grants Mr. Osagie's motion for leave to amend and accepts the Amended Complaint that he provided as the operative Complaint in this case.[3]

## II. STANDARD OF REVIEW

Defendants move to dismiss under Federal Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction, and under Rule 12(b)(6), arguing that Mr. Osagie fails to state a claim. Dismissal under 12(b)(1) is appropriate when the Court lacks the statutory or

---

[3] Defendants' motions to dismiss the initial Complaint, ECF Nos. 20 & 25, are denied as moot.

constitutional power to adjudicate the claim. Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction bears the burden of proving subject matter jurisdiction by a preponderance of the evidence and the "Court may consider evidence outside the pleadings." *P v. Greenwich Bd. of Educ.*, 929 F. Supp. 2d 40, 45-46 (D. Conn. 2013) (citing *Makarova*, 201 F.3d at 113) (internal citations omitted). Otherwise, the standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are "identical." *Id.*; *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. ... But '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'") (citing *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In determining whether Plaintiffs

have met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## III. DISCUSSION

Defendants move to dismiss Mr. Osagie's Complaint in its entirety. They raise three issues. First, all three defendants argue that Mr. Osagie may not bring this action as a pro se party, because he raises claims on behalf of his wife. Second, all three Defendants argue that Mr. Osagie's claims against them should be dismissed under Rule 12(b)(1), because Mr. Osagie is seeking federal review of a state court judgment, which is forbidden under the *Rooker-Feldman* doctrine. Third, Defendants Strumpf and U.S. Equities argue that, in the alternative, Mr. Osagie's claims should be dismissed under Rule 12(b)(6) because they were raised in the state court action and cannot be raised again. For the reasons that follow, the Court dismisses Mr. Osagie's Complaint under Rule 12(b)(6).

### A. Mr. Osagie's *pro se* Status

Defendants argue that Mr. Osagie, "lacks the ability to bring this action on behalf of his wife," Strumpf Mem., 1, which should "dispose of the action," Doherty Mem., 4. Mr. Osagie responds that he "brought this action in his individual capacity as an assignee" of Ms. Osagie's Chase Bank account. Opp. Mem., 9.

Although litigants in federal court have a statutory right to choose to act as their own counsel, *see* 28 U.S.C. § 1654, an individual who is not licensed as an attorney "may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998). This rule extends to pro se plaintiffs who seek to raise claims on behalf of family members. For example, Second Circuit has held that a "non-attorney parent must be represented

by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc*., 906 F.2d 59, 61 (2d Cir.1990); *see also Harvey v. Chemung County*, No. 11–CV–6563T, 2012 WL 729714, at *5 (W.D.N.Y., Mar. 6, 2012) (*pro se* plaintiff prohibited from raising claims on her husband's behalf) (quoting *Fitch v. Arnot Ogden Medical Center*, No. 11–CV–6284T, 2011 WL 5508603, at *2 (W.D.N.Y., Sept. 16, 2011)).

Generally, a plaintiff can only assert his own rights. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction ... can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action."). Therefore, "jurisdiction cannot be invoked solely on the basis of harms to a plaintiff's spouse." *Hui Yu v. U.S. Dep't of Homeland Sec*., 568 F. Supp. 2d 231, 234 (D. Conn. 2008) (citing cases). Courts in this District have observed that "a spouse without legal title has no interest in marital property prior to obtaining a judgment creating such an interest." *U.S. v. All Funds on Deposit at Citigroup Smith Barney Account*, 617 F.Supp.2d 103, 117 (E.D.N.Y. Sept. 10, 2007) (quoting *Galtieri v. Kelly*, 441 F.Supp.2d 447, 456 (E.D.N.Y. 2006)). Furthermore, the "mere fact that an individual is related to a property owner in no way conveys the type of ownership or possessory interest that is sufficient to establish standing." *Id.* at 118.

Mr. Osagie, however, argues that he "brought this action in his individual capacity as assignee of [Ms. Osagie's Chase Bank account] through an agreement he had with [Ms. Osagie]." Opp. Mem., 9. He asserts his own "interest" in the bank account that is the subject of the litigation. The Court will presume that Mr. Osagie has experienced sufficient "injury" to give him standing to sue on a personal basis. *See Amtrust North America, Inc. v. Safebuilt Insurance Services, Inc*., 2015 WL 7769688, at *4 (S.D.N.Y., 2015) (plaintiff's "duty to indemnify [indemnitee] and hold it harmless against claims arising out of their contractual

relationship … is sufficient to confer standing on AmTrust to move to dismiss the claims against [indemnitee].").  It will not dismiss Mr. Osagie's *pro se* Complaint for asserting claims on behalf of his wife.

### B.  Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(1)

Defendants argue that Mr. Osagie's claims are prohibited by the *Rooker-Feldman* doctrine because all of the injuries they claim "result from a state court judgment."  Strumpf Mot., 17; *see also* Doherty Mot., 8 ("Plaintiff complains of injuries from that judgment, initially expressly asked this Court to issue a declaration 'nullifying' it, and now asks this Court to effectively nullify the state court's judgment by holding that the state court lacked subject matter jurisdiction.").  Mr. Osagie responds that he was not "a party to the state case nor has he asked for a review of the decisions of the state-court."  Opp. Mem., ECF No. 34-1, 5.  The Court agrees with Mr. Osagie.

Mr. Osagie's claims are not barred by the *Rooker-Feldman* doctrine because he was not a party to the state court foreclosure proceedings.  Defendant Doherty argues that the *Rooker-Feldman* doctrine is applicable to Mr. Osagie's claims because he is in privity with Ms. Osagie, who was a party to the foreclosure proceedings, Doherty Reply, 5, and that the two have an identical interest in the debt that is the subject of the present litigation.  *Id.* (citing *Gould v. Airway Office, LLC*, No. 15 CIV. 7964 (PAE), 2016 WL 3948102, at *4 (S.D.N.Y. July 19, 2016)).

In *Gould*, the federal plaintiff was president and registered agent for Portage Partners, the defendant in the state court action.  *Gould*, 2016 WL 3948102, at *4.  In his Complaint, Gould "treat[ed] as synonymous himself and Portage Partners."  *Id.*  Like Gould, Mr. Osagie uses the term "we" to refer to himself and his wife in his Complaint, cites his indemnification agreement

with Ms. Osagie, and acknowledges his own interest in the subject debt.  While this suggests that Mr. Osagie's interest could be "identical to the interest of [Ms. Osagie] in the state-court litigation," *id.* at *5, the Supreme Court has emphasized that the *Rooker-Feldman* doctrine is a "narrow one."  *Lance v. Dennis*, 546 U.S. 459, 464 (2006).  It has also cautioned against "erroneously conflating preclusion law with *Rooker-Feldman.*"  *Id.* at 466 ("*Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."); *Worthy-Pugh v. Deustche Bank Nat'l Tr. Co*., No. 3:14-CV-1620(AWT), 2016 WL 2944535, at *6 (D. Conn. Jan. 29, 2016), *aff'd sub nom. Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co*., 664 F. App'x 20 (2d Cir. 2016) (*Rooker-Feldman* did not block claims of federal plaintiff who was "married co-habitant" with the state court debtor and co-plaintiff, even though "their legal interest in the funds is identical and they are in privity.").

While the Supreme Court left open the possibility that there were "limited circumstances . . . in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding," Mr. Osagie's case does not fall squarely within those limits.  *Lance*, 546 U.S. at n. 2 (naming a single example of such a circumstance: "Where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent.").  The Court therefore will not dismiss his case under the *Rooker-Feldman* doctrine.

### C.  Motion to Dismiss under Rule 12(b)(6)

Defendants also argue that dismissal is warranted under the doctrine of *res judicata.* Strumpf Mot., 16; Doherty Mot., 2-3 (discussing claim six).  Mr. Osagie responds that the "exploits of the defendants through the Connecticut judiciary are interesting, [but] have no

bearing on this case," Opp. Mem., ECF No. 35-1, 1, because he was not a party in the state court action. *Id.* at 10. The Court agrees with Defendants.

This case involves two judicial doctrines that concern the finality of judgments. "Claim preclusion, or *res judicata*, "prevents a litigant from reasserting a claim that has already been decided on the merits." *Dowling v. Finley Associates, Inc.*, 248 Conn. 364, 373 (Conn. 1999). Issue preclusion refers to the "related idea" that a party cannot "relitigat[e] an issue that has been determined in a prior suit." *Id.* Both doctrines "protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." *Id.*

State court judgments have *res judicata* effect in federal courts. *Migra v. Warren City School Dist.*, 465 U.S. 75, 85 (1984). In evaluating the *res judicata* effects of a previous state court judgment, federal courts apply that state's rule of law as to *res judicata. Id.* "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id.* at 81 (internal quotations and citations omitted); *see also AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) ("Where there is a final state court judgment, a federal court looks to that state's rules of res judicata to determine the preclusive effect of that judgment.").

In Connecticut, collateral estoppel, or issue preclusion, is "that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *Lighthouse Landings, Inc. v. Connecticut Light and Power Co.*, 300 Conn. 325, 343 (Conn. 2011). An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined," and is "necessarily determined if, in the absence of a

determination of the issue, the judgment could not have been validly rendered." *Id.* (internal citations omitted).

Under the doctrine of *res judicata*, by contrast, "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." *Dowling*, 248 Conn. at 373. Connecticut courts are mixed as to whether a plaintiff is precluded by the *res judicata* doctrine from bringing a claim that she could have brought, but was not required to bring, as a counterclaim in a previous action. The majority of courts, though, apply *res judicata* to permissive counterclaims, keeping in mind "the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *Weiss v. Weiss*, 297 Conn. 446, 459-60 (Conn. 2010); *see generally Dunham v. Dunham*, 221 Conn. 384, 391-92 (1992) (*res judicata* barred prosecution of claims that could have been brought as counterclaims, because "'[t]he doctrine … provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made.'") (citing *Gagne v. Norton*, 189 Conn. 29, 32 (1983)); *but see Trimmel v. Gen. Elec. Credit Corp.*, 555 F. Supp. 264, 267 (D. Conn. 1983) ("Under Connecticut law, Trimmel's Truth-in-Lending claim is a permissive rather than compulsory counterclaim to the state foreclosure action. With state law in this posture, federal courts would not bar Trimmel's Truth-in-Lending claim because she failed to assert it as a counterclaim in the state suit.") (internal citations omitted); *State v. Bacon Const. Co.*, 160 Conn. App. 75, 88 (2015) ("In Connecticut, the fact that a defendant in a prior action did not assert a related cause of action in that prior action does not foreclose the defendant from asserting those claims in a new action filed in the future"); *Hansted v. Safeco Ins. Co. of Am.*, 19 Conn. App. 515, 521 (1989) ("Because Connecticut does not have a compulsory counterclaim

rule . . . Hansted cannot be precluded from bringing the present claim on the ground that he failed to bring a counterclaim in [a prior action]"); *Battista v. DeNegris*, No. CV93-0525774, 1994 WL 530165, at *1 (Conn. Super. Ct. Sept. 16, 1994) (noting that *res judicata* is aimed at preventing duplicative suits by plaintiffs, but cannot bar previous defendants from bringing a potential counterclaim in a separate action, because "we live for better or worse in a so-called permissive counterclaim state.").

Rather than concluding that *res judicata* can never apply to permissive counterclaims, most Connecticut courts use a transactional test for determining whether *res judicata* should apply. *See Weiss,* 297 Conn. at 460-61; *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 159 (2016) ("Although *res judicata* bars claims that were not actually litigated in a prior action, the previous and subsequent claims must be considered the same for *res judicata* to apply"); *Chien v. Skystar Bio Pharmaceutical Co.,* 623 F. Supp. 2d 255, 260 (D. Conn. 2009) (*res judicata* "bars not only those claims or legal theories that were asserted in the prior action, but also those legal claims or theories that could have been asserted, regardless whether they were in fact raised by the parties, so long as they arise from the same transaction that formed the basis of the prior action.") (quoting *Balderman v. U.S. Veterans Admin.,* 870 F.2d 57, 62 (2d Cir.1989)); *Legassey v. Shulansky*, 28 Conn. App. 653, 656 (Conn. App. Ct. 1992) (same).

"The transactional test measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Weiss,* 297 Conn. at 461. "What factual grouping constitutes a 'transaction' [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.*

When claims are "distinct" nature in nature, require different "facts, witnesses, or evidence," *res judicata* does not apply. *Wheeler*, 320 Conn. at 162 (internal citations omitted).

### 1. The prospect of applying *res judicata* against Mr. Osagie

Mr. Osagie argues that Defendants cannot invoke the doctrine of *res judicata* because he was not a party in the state court action against his wife. A party can only assert *res judicata* against a nonparty to a prior action if there is a privity relationship between the nonparty and a party to the state court action. The privity requirement exists "to ensure that the interests of the party against whom [res judicata] is being asserted have been adequately represented." *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 304 (1991) (internal quotation marks omitted). In determining whether privity exists, Connecticut courts "employ an analysis that focuses on the functional relationships of the parties," in which "privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts," but rather exists when "the interest of the party to be precluded [has] sufficiently represented in the prior action so that the application of [res judicata] is not inequitable." *Mazziotti v. Allstate Ins. C*o., 240 Conn. 799, 814, 818 (1997). "A key consideration ... is the sharing of the same legal right." *Aetna Casualty*, 220 Conn. at 304; *Bagoly v. Riccio*, 102 Conn. App. 792, 802, *cert. denied*, 284 Conn. 931, 934 A.2d 245 (2007) ("A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity."). Because parties may share some legal rights and not others, parties may be in privity with respect to some claims, but not others. *Wheeler*, 320 Conn. at 166-67.

When a nonparty shares an "identical legal right" with a party to a previous lawsuit, the two parties are in privity. *Aetna Casualty*, 220 Conn. at 305. The parties' legal rights may be identical if they are "derived from the [same] contractual relationship." *Id.* In *Aetna Casualty*,

the Connecticut Supreme Court examined "whether an insurance company may use collateral estoppel to bar the heirs of a homicide victim from relitigating the issue of the criminal defendant's intent to cause the injuries that resulted in the victim's death." *Id.* at 288. In an earlier criminal trial, the defendant, Russell Manfredi, had been charged with the intentional murder of his wife. Although he admitted killing her, he denied that he had intended to kill her. Nevertheless, the jury found Manfredi guilty of manslaughter, explicitly finding that he had intentionally killed his wife, but suffered from an extreme emotional disturbance at the time of the killing. *Id.* at 288.

Afterwards, the administratrix of the victim's estate brought a wrongful death action against Manfredi, who was the named insured on insurance policies issued by Aetna. The policies contained language limiting coverage only to those injuries not intentionally caused by the insured. Aetna filed a declaratory judgment action to establish that the insurance policies did not apply to cover the award, because the injuries suffered by the victim had been caused intentionally by Manfredi, the insured. The Supreme Court concluded that Aetna could invoke the collateral estoppel doctrine against the estate because the estate was in privity with Manfredi, the criminal defendant. *Id.* at 305. Both Manfredi and the estate derived their right to recover from the same insurance contract with Aetna. *Id.* "If Manfredi fails to qualify for coverage under the policy," the Court reasoned, "[the estate], too, would fail to qualify. In this sense, the rights of the estate are entirely dependent upon and limited by the rights of Manfredi." *Id.* at 306.

Mr. Osagie claims an interest in his wife's contract with Chase and bases his claims on that interest. Because he has no independent relationship with Chase, his rights are "entirely dependent upon and limited by the rights" of his wife. *Aetna Casualty*, 220 Conn. at 306. Like

the claims of the estate in *Aetna Casualty*, Mr. Osagie's claims are based on the same contractual rights as his wife's were. This "identification in interest" of Mr. and Mrs. Osagie therefore justifies preclusion in this case. *Mazziotti*, 240 Conn. at 813-14; *Ear, Nose & Throat Grp., P.C. v. Stanescu*, 46 Conn. Supp. 14, 18-19 (Conn. Super. Ct. 1999) (when "the liability of a party is derivative of or predicated upon the liability of a primary party with whom it has an identity of interest, the parties share the same legal right [and t]here is privity.").

Furthermore, Mr. Osagie alleges that there is an indemnification agreement between himself and Ms. Osagie that underlies his interest in his matter. Compl. ¶ 40. Generally, an "indemnitor is precluded from relitigating issues determined in the action against the indemnitee if … the indemnitee defended the action with due diligence and reasonable prudence." Restatement (Second), Judgements § 57(1)(b). The record does not suggest that there is a conflict of interest between Mr. Osagie and his wife, such "neither of them could defend the action in a way that would fairly protect the interests of the other in all respects." *See id.* at (2)-(3); *DaCruz v. State Farm Fire and Cas. Co*., 268 Conn. 675, 692 (Conn. 2004) (insurer and insured tortfeasor not in privity "[b]ecause State Farm's primary and overriding interest was not in establishing that Michael Bullock was not liable to the plaintiff but, rather, in obtaining a determination that it had no duty to defend or to indemnify Michael Bullock because his conduct was not covered by [the] insurance policy."). Rather, the parties share an interest in avoiding liability for debts under Ms. Osagie's contract with Chase Bank. For each claim, therefore, Mr. Osagie's interests were "sufficiently represented in the prior action," and "the application of [res judicata] is not inequitable." *Mazziotti*, 240 Conn. at 814.

### 2. The application of *res judicata* or collateral estoppel to Mr. Osagie's claims

Whenever a party invokes collateral estoppel or *res judicata*, but "especially in those cases where there is a lack of mutuality or the doctrine of privity is raised," the Court "must make certain that there was a full and fair opportunity to litigate." *Aetna Casualty*, 220 Conn. at 306. When Defendants invoke collateral estoppel, the Court must insure that the issue Mr. Osagie raises was "necessarily determined" in the state court action. *Lighthouse Landings*, 300 Conn. at 343. When Defendants invoke *res judicata*, the Court must determine whether Mr. Osagie's claims "relate to the cause of action" in state court and "were raised or could have been raised" in that action. *Weiss*, 297 Conn. at 461.

In the state court action, Defendant U.S. Equities brought a claim of account stated against Ms. Osagie. Account stated is a theory of recovery "in which, by contract, the debtor has a reasonable period of time in which to question all or part of the indebtedness." *Am. Exp. Centurion Bank v. Eldridge*, No. CV116020750S, 2012 WL 3666512, at *3-4 (Conn. Super. Ct. Aug. 2, 2012) (collecting cases). In an account stated case, the "delivery by the [creditor] to the [debtor] of each statement of the latter's account, with the [documentation] upon which the charges against [the debtor's account] were based, [is] a rendition of the account so that retention thereof for an unreasonable time constitute[s] an account stated which is prima facie evidence of the correctness of the account." *Citibank (South Dakota), N.A. v. Evvard*, 128 Conn. App. 843, 844 n. 2, 18 A.3d 682 (2011); *see also General Petroleum Products, Inc. v. Merchants Trust Co*., 115 Conn. 50, 56, 160 A. 296 (1932) (same).

### a. Claim One

In Mr. Osagie's first claim, he seeks a declaratory judgment that "Connecticut common laws are not applicable to any collection effort on [Ms. Osagie's Chase Bank] account and that account is governed and can only be interpreted in accordance with Federal law and to the extent state law applies, the law of Delaware." Compl. ¶ 50. Ms. Osagie raised this claim in her motion to dismiss in state court. When he denied this motion, Judge Doherty explained that, no matter the choice of law clause in the contract, the collection effort was properly commenced in Connecticut and assessed under Connecticut law. *See* Mem. of Decision, Docket No. 126.50. Because this issue was "properly raised in the pleadings or otherwise, submitted for determination, and, in fact, determined," in the state court action, *Lighthouse Landings*, 300 Conn. at 343, Mr. Osagie is collaterally estopped from raising it here.

### b. Claim Five

Mr. Osagie's fifth claim, which alleges that Defendants Strumpf and U.S. Equities violated the Federal Debt Collection Practices Act ("FDCPA") by attempting to "collect on a time-barred debt." Compl. ¶¶ 83-87. The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute imposes civil liability on debt collectors who violate its provisions, and provides that an action under the statute may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Because Mr. Osagie filed his Complaint on August 2, 2016, any "violation" must have occurred between August 3, 2015 and August 2, 2016 for his claim to be timely under the FDCPA's statute of limitations.

The violation that Mr. Osagie describes—Defendants "attempt[] to collect a time-barred debt"—occurred in 2012, when Defendants Strumpf and U.S. Equities filed the state court action. *Id.* at ¶ 83. While Mr. Osagie alleges that Defendants' "collection on [the] Chase

account … continues to this day," *id.* at ¶ 38, this collection is no longer based on the time-barred debt, but on the Superior Court's judgment in favor of the plaintiffs on their account stated claim. Furthermore, "FDCPA claims based on the filling of a lawsuit generally accrue when a claim is filed, not when judgment is rendered." *Egbarin v. Lewis, Lewis & Ferraro LLC*, No. 3:00-CV-1043(JCH), 2006 WL 236846, *9 (D. Conn., Jan. 31, 2006).

Additionally, the Osagies could likely have raised this claim in the state court action, meaning that dismissal under *res judicata* would be appropriate. *See Cuda & Associates, LLC v. Yuchniuk*, No. CV095013066, 2012 WL 164435, *5 (Conn. Super. Ct. Jan. 3, 2012) (considering FDCPA counterclaim in account stated action, but finding that "the defendant has not sustained his burden of proof on his counterclaim for a violation of the FDCPA."); *Citibank, N.A. v. Quigg*, No. CV146010624S, 2014 WL 6420717, *1 (Conn. Super. Ct. Oct. 9, 2014) (raising FDCPA violations as affirmative defenses to account stated claim); *Citibank (South Dakota) N.A. v. Mazzarella*, TTDCV106002096S, 2010 WL 5610861, *4 (Conn. Super. Ct. Dec. 14, 2010) (the defendant could not raise FDCPA claim as special defense to account stated claim, but considering counterclaim under CUTPA that the plaintiff bank "violat[ed] numerous federal credit law statutes, presumably the Fair Debt Collections Practice Act (FDCPA).").

### c. Claim Six

In his sixth claim, Mr. Osagie seeks a declaratory judgment saying that Judge Doherty lacked subject matter jurisdiction over the action and that his exercise of jurisdiction violated 42 U.S.C. Sec. §§ 1983 and 1985. Mr. Osagie's sixth claim was necessarily decided in the state court action and is barred by issue preclusion. In an account stated case, as in any case, "the plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." *Fort Trumbull Conservancy, LLC v. New London*, 265 Conn. 423, 430 n. 12 (2003) (internal

quotation marks omitted). The absence of jurisdiction can be a defense in an account stated action because "it is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Wilcox v. Webster Ins., Inc.*, 294 Conn. 206, 213-14 (2009) (internal quotation marks omitted); *see also Cach, LLC v. Speer*, KNLCV116011442S, 2012 WL 3089396, *4 (Conn. Super. Ct. July 2, 2012) (evaluating motion to dismiss for lack of subject matter jurisdiction in account stated case); *Citibank (South Dakota) N.A. v. Smith*, TTDCV075001289S, 2007 WL 2038936, *3 (Conn. Super. Ct. June 22, 2007) (lack of personal jurisdiction raised as a special defense to account stated claim). Mr. Osagie cannot challenge the state court's jurisdiction in this case, because jurisdiction was "necessarily decided" in the state court action. *See Bristol Heights Associates, LLC v. Chicago Title Ins. Co*., 950 F. Supp. 2d 408, 417 (D. Conn. 2013) ("Issue preclusion prevents the court from reconsidering liability under the Policy because that issue was necessarily decided by the state trial court.").

### d. Claims Two, Three, and Four

Mr. Osagie's second, third, and fourth claims reference Delaware common law. In his second and third claims, Mr. Osagie asserts two causes of action for negligence. In the second claim, Mr. Osagie claims that Defendants U.S. Equities and Ms. Strumpf negligently attempted to collect debt on the Chase account, although they knew that such an attempt was a violation of Delaware state law. Compl. ¶¶ 55-58 (citing Del. Code Ann. Tit 10. SS8106, 8107 *et seq*.). In the third, for "negligence," he alleges that the same two Defendants negligently "pursu[ed] a disputed debt based on the laws of the State of Delaware after recovery on the debt was time-barred was negligent under the laws of the State of Delaware." *Id.* at 65. In the fourth claim, for "fraudulent/intentional misrepresentation," Mr. Osagie alleges that the same two Defendants

intentionally and fraudulently refused to provide a copy of the purchase agreement in a debt collection letter to Ms. Osagie, "in order to hide their knowledge of" the agreement's "choice-of-law" provisions. Compl. ¶ 74.

Having granted the motion to dismiss Mr. Osagie's federal claims and requests for declaratory judgment, the Court declines to exercise supplemental jurisdiction over their state law claims. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While dismissal of the state claims is not absolutely mandatory, *Rosado v. Wyman*, 397 U.S. 397, 403-05, (1970), the Supreme Court has noted that "when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (identifying factors such as "values of judicial economy, convenience, fairness, and comity").

The Court notes, however, that an action for negligence or fraud based on a party's pursuit of an account stated claim, like an action for vexatious litigation, is difficult to maintain when the account stated action was resolved in favor of the allegedly negligent party. *DeLaurentis v. City of New Haven*, 220 Conn. 225, 248 (Conn. 1991) ("To establish [a] cause of action [for vexatious litigation], it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor."). One concern underlying this requirement "the danger of inconsistent judgments if defendants use a vexatious suit or malicious prosecution action as a means of making a collateral attack on the judgment against them or as a counterattack to an ongoing proceeding." *Id.* at 251. To the extent that Mr. Osagie claims that

Defendants Strumpf and U.S. Equities negligently filed suit in Superior Court, he would have a hard time bringing this claim. *See id; Frisbie v. Morris*, 75 Conn. 637, 640 (1903) (in an action for vexatious suit, where judgment was properly rendered against the defendant in the prior action, this is, "as a general rule, conclusive evidence of the existence of probable cause for instituting the . . . suit"); *Kaye v. Pantone, Inc*., 395 A.2d 369, 372 (Del.Ch., 1978) ("In order to sustain a cause of action sounding in malicious prosecution, several allegations must co-exist: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) the termination of the proceedings in the aggrieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury.").  Nevertheless, the Court need not exercise its "discretionary" power to hear state law claims. *Carnegie-Mellon*, 484 U.S. at 350.

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motions to Dismiss directed at the amended Complaint are GRANTED.

SO ORDERED at Bridgeport, Connecticut this 24th day of August 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE